UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-61828-CIV-WPD/LSS

AMGEN INC. and AMGEN
MANUFACTURING LIMITED,

        Plaintiffs,

  v.

APOTEX INC. and APOTEX CORP.,

        Defendants.

**DEFENDANTS APOTEX INC. AND APOTEX CORP.'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## **TABLE OF CONTENTS**

                                                                                                                                   **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

I.     INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT ............................................................................................................... 2

        A.     The Prosecution History of the '287 Patent Evinces a Clear and
              Unmistakable Surrender of Claim Scope and Estoppel ......................................... 2

        B.     This Case Meets the Standard for Collateral Estoppel ........................................... 4

              1.     The Present Litigation Plainly Involves Identical Claim Terms
                    and Issues of Infringement ......................................................................... 4

              2.     This Court's Constructions for the Terms "Thiol-Pair Ratio"
                    and "Thiol-Pair Buffer Strength" Were Critical and Necessary
                    for This Court's Judgment in the Prior Litigation ...................................... 6

              3.     Amgen's Legal Authority Cited in Arguing Against Collateral
                    Estoppel is Readily Distinguishable ........................................................... 7

        C.     Amgen's Disavowal of Claim Scope and Collateral Estoppel From the
              Prior Litigation Warrant Dismissal of Amgen's Complaint For Failure
              to State a Claim .................................................................................................... 8

        D.     The Court Need Not Assume that Amgen's Baseless Allegations are True,
              and the Allegations Do Not Warrant Discovery ..................................................... 9

        E.     Apotex's Motion Cites *Coherus* As Instructive, Not Precedential ...................... 10

III.   REQUEST FOR ORAL HEARING .......................................................................... 10

IV.   CONCLUSION .......................................................................................................... 10

## **TABLE OF AUTHORITIES**
**Cases**            **Page(s)**

*ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*,
   908 F.3d 1267 (Fed. Cir. 2018)..................................................................................................7

*Armor Screen Corp. v. Storm Catcher, Inc.*,
   No. 07-81091-CIV, 2009 WL 988846 (S.D. Fla. Mar. 10, 2009) ...............................................4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................................9

*Chaparro v. Carnival Corp.*,
   693 F.3d 1333 (11th Cir. 2012) ..................................................................................................9

*Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*,
   72 F. Supp. 3d 521 (D. Del. 2014)..............................................................................................2

*Kan. Penn Gaming, LLC v. Collins*,
   656 F.3d 1210 (10th Cir. 2011) ..................................................................................................9

*Mamani v. Berzain*,
   654 F.3d 1148 (11th Cir. 2011) ..................................................................................................9

*Nestle USA, Inc. v. Steuben Foods, Inc.*,
   884 F.3d 1350 (Fed. Cir. 2018)..................................................................................................6

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003)..................................................................................................2

*Personalized Media Commc'ns, LLC v. Apple Inc.*,
   No. 2:15-cv-1366, 2016 WL 5719701 (E.D. Tex. Sept. 13, 2016)............................................7

*Purdue Pharma L.P. v. Mylan Pharms. Inc.*
   No. 15-cv-1155-RGA-SR, 2017 WL 784989 (D. Del. Mar., 1, 2017) ......................................7

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
   678 F.3d 235 (3d Cir. 2012)................................................................................................ 9-10

*Yodlee, Inc. v. Plaid Technologies*,
   No. 14-cv-1445-LPS, 2016 WL 204372 (D. Del. Jan. 15, 2016) ..............................................7

I.      **INTRODUCTION**

Amgen's Opposition to Apotex's Motion to Dismiss misrepresents the facts, misrepresents the law, and is an exercise in trying to create confusion and doubt where none exists. Amgen's Opposition rests on legal authority that is plainly distinguishable from the facts at hand, and Apotex respectfully submits that the Court should find that Amgen is collaterally estopped from proceeding with its bare, conclusory allegations set forth in Amgen's Complaint, which fail to satisfy the *Iqbal/Twombly* pleading standard.

Under the doctrine of prosecution history disclaimer, it is wholly appropriate for this Court to consider arguments Amgen made during prosecution to evaluate the literal scope of the claims of U.S. Patent No. 9,856,287 ("the '287 patent"). As discussed in Apotex's Motion, Amgen clearly and unmistakably disclaimed any coverage of a protein refolding process that merely uses an oxidant and reductant and does not relate the oxidant and reductant concentrations using the equations of the '287 patent. Amgen's Complaint does not and cannot cite anything in Apotex's aBLAs showing that Apotex's manufacturing process infringes the limitations of claim 16 of the '287 patent that require the "amounts of the oxidant and reductant are related through a thiol-pair ratio and thiol-pair buffer strength" and "the thiol-pair buffer strength maintains the solubility of the solution." Thus, the fact that Apotex's accused process indisputably does not relate its oxidant and reductant concentrations using the claimed "thiol-pair ratio" or "thiol-pair buffer strength" is dispositive of the infringement inquiry—regardless of whether Amgen alleges literal infringement or infringement under the doctrine of equivalents.

Nor is there any reason for the Court to delay ruling on Apotex's Motion until after claim construction. The cases Amgen cites in its Opposition are clearly distinguishable from the facts at hand. And Amgen cannot credibly argue that the phrases "thiol-pair ratio" and "thiol-pair buffer strength" were not construed in the prior litigation, or should have different meanings in the context of the '287 patent. In the prior litigation Amgen unequivocally argued, and this Court held, that the "thiol-pair ratio" and "thiol-pair buffer strength" cannot be calculated in the solution where protein re-folding occurs. Because the specifications of the '138 and '287 patents are identical, there is no basis for Amgen's assertion that the "thiol-pair" claim terms have different meanings or should be read in a different context in the '287 patent. Further, there can be no dispute that this Court's constructions for these terms were "critical and necessary" to findings that supported entry of final judgment for Apotex. Indeed, this Court found that

Apotex's manufacturing process did not infringe the claims of the '138 patent because a thiol-pair buffer strength of 2mM or greater was not met.

Finally, no further discovery is needed in this case. The parties fully litigated these same issues in the prior litigation involving the '138 patent, including full discovery of Apotex's manufacturing process. Much of that discovery, including the relevant disclosures from Apotex's aBLAs, became publicly available during Amgen's appeal of this Court's judgment in favor of Apotex. Thus, Amgen had all that it needed in order to investigate Apotex's possible infringement of the '287 patent, but could only come up with the bare, conclusory allegations set forth in its Complaint. There is simply no basis to prolong this case, and Apotex's motion to dismiss should be granted.

## II.   ARGUMENT

### A.   The Prosecution History of the '287 Patent Evinces a Clear and Unmistakable Surrender of Claim Scope and Estoppel

Amgen alleges that arguments it made to the U.S. Patent Office ("PTO") during prosecution of the '287 patent were not a surrender of claim scope and do not estop Amgen from alleging infringement under the doctrine of equivalents. *See* D.E. 46 at 13-16. However, to be clear, Amgen's arguments to the PTO that resulted in issuance of the '287 patent are relevant to <u>both</u> limiting the application of the doctrine of equivalents (as discussed in Apotex's Motion), <u>and</u> in assessing the literal scope of the claims under the doctrine of prosecution history disclaimer. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). Prosecution history disclaimer excludes from the claims of the '287 patent any subject matter that was clearly and unmistakably disavowed during prosecution. *Id.* Further, despite Amgen's arguments to the contrary, the Court may consider the prosecution history of the '287 patent in deciding a motion to dismiss. *See Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*, 72 F. Supp. 3d 521, 526 (D. Del. 2014) ("A court may also take judicial notice of the prosecution histories, which are 'public records.'"), *aff'd sub nom., Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369 (Fed. Cir. 2016).

In assessing whether Amgen's arguments to the PTO during prosecution of the '287 patent evinced a "clear and unmistakeable" disavowal of claim scope, it is important to first note what is not in dispute. Amgen's Opposition does not dispute that the three prior art references (Oliner, Schlegl, and Hevehan) the PTO cited in its rejection of the pending claims of the '287

2

patent each disclosed a process for protein refolding that used an oxidant and reductant. It is similarly undisputed that Amgen responded to the PTO's rejections by amending the claims to require that "the amounts of the oxidant and reductant are related through a thiol-pair ratio and a thiol-pair buffer strength" and the "thiol-pair buffer strength maintains the solubility of the preparation." *See, e.g.,* D.E. 9, Exh. 9 at 2, claim 25. Finally, there can be no dispute that each and every independent claim of the '287 patent requires a "thiol-pair ratio" and "wherein the thiol-pair ratio is in the range of 0.001-100."

Amgen nonetheless argues there was no clear disavowal of claim scope because: (1) Amgen's arguments to the PTO were applicable only to certain dependent claims of the '287 patent that recite the equations for calculating the "thiol-pair ratio" and "thiol-pair buffer strength"; and (2) the PTO allowed the claims of the '287 patent for reasons unrelated to Amgen's arguments. *Id.* Amgen is incorrect, and its arguments are contradicted by a plain reading of the prosecution history of the '287 patent.

*First*, Amgen alleges that its arguments to the PTO concerning the prior art's failure to disclose a "thiol-pair ratio" and "thiol-pair buffer strength" "have no bearing on the scope of the '287 Patent's independent claims" because the equations to calculate these claim terms appear only in dependent claims. *Id.* However, each and every independent claim of the '287 patent (claims 1, 10, 16, and 26) requires a "thiol-pair ratio," as well as the limitation "wherein the thiol-pair ratio is in the range of 0.001-100." *See* D.E. 9, Exh. 7 at col. 18, ll. 34-37; col. 19, ll. 12-15, ll. 63-67; col. 20, ll. 53-57. Thus, the independent claims of the '287 patent clearly require calculation of a "thiol-pair ratio" in order to determine whether that limitation is met. Further, the '287 patent defines the "thiol-pair ratio" and "thiol-buffer strength" solely using the equations set forth in the dependent claims, and discloses no other way to ascertain these limitations. *See* D.E. 9, Exh. 7 at col. 6, ll. 46-55 and 56-68. Therefore, Amgen's assertion that it "did not make any statements during prosecution suggesting that use of the equations is required to practice the methods of the independent claims" (D.E. 46 at 16) is plainly contradicted by the words of the independent claims themselves. As a result, Amgen's arguments to the PTO that its invention was different from the prior art because of the required "thiol-pair ratio" and "thiol-buffer strength" should in no way be limited to specific dependent claims of the '287 patent.

*Second*, Amgen clearly and unmistakably surrendered subject matter relating to protein

3

refolding methods that merely use an oxidant and reductant and do not relate their concentrations using a "thiol-pair ratio" or "thiol-pair buffer strength."  Such prior art protein refolding methods that use an oxidant and reductant without relating their concentrations using Amgen's equations are precisely what Oliner, Schlegl, and Hevehan disclosed, and the PTO accepted Amgen's arguments that its invention was different from the protein refolding methods disclosed in these references.  Indeed, the only arguments the PTO viewed favorably in differentiating the '287 patent's claims from the prior art were those that related to the prior art failing to disclose the use of a "thiol-pair ratio" and "thiol-pair buffer strength."  Specifically, as stated in the PTO's Notice of Allowability, "[t]he following is an examiner's statement of reasons for allowance: the claims are allowable because **the most pertinent prior art neither teaches nor suggests the final thiol-pair ratio or strength** as set forth in claims 34, 35, 56-57, 65-67, and 72." D.E. 9, Exh. 10 at 2 (emphasis added).

For these reasons, Amgen's arguments that there was no clear disavowal of claim scope over the prior art are plainly contradicted by the prosecution history of the '287 patent, and should therefore be rejected.

### B. This Case Meets the Standard for Collateral Estoppel

Amgen argues that collateral estoppel does not apply because the '287 patent raises different issues of claim construction and infringement, and because this Court's claim construction in the prior litigation was not a "critical and necessary" aspect of the judgment.  *See* D.E. 46 at 11-13.  However, Amgen's Opposition attempts to draw distinctions between the claim terms of the '138 and '287 patent where none exist, and plainly misrepresents the basis for this Court's prior judgment in Apotex's favor.

#### 1. The Present Litigation Plainly Involves Identical Claim Terms and Issues of Infringement

Amgen's argument that the issues in this case and in the prior litigation are not "identical" is without merit.  *Id*. at 11.  Where, as here, the same claim terms are used in related patents having identical specifications, they must be construed consistently.  *See Armor Screen Corp. v. Storm Catcher, Inc.*, No. 07-81091-CIV, 2009 WL 988846, at *20 (S.D. Fla. Mar. 10, 2009) ("Since Patent '852 is a continuation-in-part of Patent '085, the common term "securing" in both patents should be construed consistently") *citing NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005) (holding that because the patents at issue "all derive from

4

the same parent application and share many common terms, we must interpret the claims consistently across all asserted patents.")

Nor can there be any doubt that the term "redox buffer strength" (in the '138 patent) and the term "thiol-pair buffer strength" (in the '287 patent) must be construed identically. *See* D.E. 46 at 9-10. Indeed, during the prior litigation Amgen recognized that the specification of the '138 patent (which is identical to that of the '287 patent) uses these terms interchangeably. In construing the term "redox buffer strength" in the prior litigation, this Court first noted that:

> Amgen's construction is: "**Also called** 'buffer thiol strength,' **'thiol-pair buffer strength,'** or 'thiol-pair strength,' defined by the following equation: 2[oxidant] + [reductant] where the concentrations are the concentrations in the redox component."

D.E. 9, Exh. 3 at Appx8 (emphasis added). Relying on Amgen's arguments that "redox buffer strength" and "thiol-pair buffer strength" are interchangeable terms, this Court in the prior litigation construed the term "redox buffer strength" as follows:

> [B]ased upon the language of the claim and the specification, **the Court construes the term "redox buffer strength" as follows:** "**Also called** 'buffer thiol strength,' **'thiol-pair buffer strength,'** or 'thiol-pair strength,' defined by the following equation: 2[oxidant] + [reductant] where the concentrations are the concentrations in the redox component."

*Id.* at Appx8-9 (emphasis added).

Further, the fact that the claims of the '287 patent require a "solution" and do not require a "redox component" is irrelevant, and Amgen's argument that the "thiol-pair" terms in the '287 patent appear in a different "operative context" is pure sophistry. First, while the word "solution" does not literally appear in the claims of the '138 patent, the "solution" in claim 16 is indisputably where protein refolding occurs and is interchangeable and synonymous with the "refold mixture" recited in claims 1 and 10 of the '287 patent. *Compare* D.E. 9, Exh. 7, col. 18, l. 41 (claim 1: "incubating the refold mixture . . .") *with* col. 20, l. 3 (claim 16: "incubating the solution . . ."). Indeed, this Court recognized in the prior litigation that both the redox component and refold mixture are both solutions, stating that:

> The parties agree[d] on the equation for defining the redox buffer strength, but dispute[d] **which solution (the redox component or the refold mixture)** should be used as the basis for calculating the redox buffer strength.

*Id.* at Appx8 (emphasis added).

5

Moreover, during the prior litigation Amgen argued that:

> Apotex has . . . distorted the ['138] patent's teachings to leave the incorrect impression that **the concentrations of redox chemicals (i.e., oxidants and reductants)** used to calculate the thiol-pair ratio and redox buffer strength according to Equations 1 and 2, respectively, **are concentrations in the "refold solution," i.e. refold mixture.**

D.E. 9, Exh. 2 at 9 (emphasis added). The above passage illustrates that Amgen plainly recognized that the refold mixture in claim 1 of the '138 patent is the "solution" where protein refolding occurs. Further, the above passage illustrates that Amgen recognized that the term "redox component" requires nothing more than an oxidant and a reductant. Thus, Amgen's argument that the '287 patent's claims do not require a "redox component" is patently false, as every independent claim of the '287 patent requires both "an amount of oxidant" and "an amount of reductant." D.E. 9, Exh. 7, col. 18, ll. 32-33; col. 19, ll. 10-11, 61-62; col. 20, ll. 51-52. In sum, Amgen's use of the term "solution" and omission of the term "redox component" do nothing to change the "operative context" of claim 16 of the '287 patent, as Amgen's Opposition alleges.

In view of Amgen's arguments that were adopted by this Court in the prior litigation, its argument that the specification and claims of the '287 patent require a construction for the terms "thiol-pair ratio" and "thiol-pair buffer strength" that is calculated in the refold mixture (i.e., the "solution") is incredible and strains credulity. Contrary to Amgen's Opposition, *Nestle USA, Inc. v. Steuben Foods, Inc*., 884 F.3d 1350 (Fed. Cir. 2018) is plainly applicable to this case because the '138 and '287 patents have identical specifications, and it is thus axiomatic that the '138 and '287 patents use the "thiol-pair" terms in the same fashion. The fact that the word "solution" or "preparation" appears in the claims of the '287 patent does not change the analysis. It is telling that Amgen's Opposition fails to cite any authority to support the proposition that claim terms must be construed with reference to surrounding claims terms.

      **2.**      **This Court's Constructions for the Terms "Thiol-Pair Ratio" and "Thiol-Pair Buffer Strength" Were Critical and Necessary for This Court's Judgment in the Prior Litigation**

In finding that Apotex's manufacturing process did not infringe the '138 patent in the prior litigation, this Court's construction for the term "redox buffer strength" was "critical and necessary" to the finding that Apotex's accused process did not use a "buffer strength" of 2mM

6

or greater. D.E. 9, Exh. 4 at Appx28-31, Appx36-38. Indeed, this Court could not have reached that conclusion without relying on its claim construction for the term "thiol-pair buffer strength." Thus, despite Amgen's arguments to the contrary, the Court's construction of the term "thiol-pair buffer strength" played a "critical and necessary" part in the determination that Apotex's manufacturing process did not infringe the claims of the '138 patent.

### 3. Amgen's Legal Authority Cited in Arguing Against Collateral Estoppel is Readily Distinguishable

Amgen's legal authority relied on in arguing against the applicability of collateral estoppel is readily distinguishable from the facts at hand. D.E. 46 at 11-13. In *Yodlee, Inc. v. Plaid Technologies*, collateral estoppel did not attach to a prior litigation because it did not go to trial or result in a final decision. *See* No. 14-cv-1445-LPS, 2016 WL 204372, at *3 (D. Del. Jan. 15, 2016). Here, however, the prior litigation involving the '138 patent went to trial, and the Court issued a final decision. The facts in *Purdue Pharma L.P. v. Mylan Pharms. Inc.* are also distinguishable. In *Purdue*, the claim term in question in one patent was found to be a required limitation of the claims, whereas in another patent it was not necessarily a limitation of the claims. No. 15-cv-1155-RGA-SR, 2017 WL 784989, at *3-5 (D. Del. Mar., 1, 2017), *adopted by* 2017 WL 2569604 (D. Del. June 13, 2017). Again, the facts are different in this case. There is no dispute that the terms "thiol-pair ratio" and "thiol-pair buffer strength" are required limitations of the claims of both the '138 and '287 patents.

Amgen also cites *Personalized Media Commc'ns, LLC v. Apple Inc.* to support its position, a case that is also distinguishable. D.E. 46 at 12. *Personalized Media* involved a determination as to whether claims from two patents were virtually identical for the purposes of determining patent eligibility under 35 U.S.C. § 101. No. 2:15-cv-1366, 2016 WL 5719701, at *2-3 (E.D. Tex. Sept. 13, 2016), *adopted by* 2016 WL 5475798 (E.D. Tex. Sept. 28, 2016). Thus, the court was not addressing whether collateral estoppel applied for claim constructions for the same terms used in two related patents with identical specifications, as is the case here. Amgen's reliance on *ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.* is similarly misplaced, as the inquiry there involved the question of whether collateral estoppel applied to different accused products. 908 F.3d 1267, 1274-1277 (Fed. Cir. 2018). There is no dispute that Amgen now accuses the same manufacturing process that was the subject of the prior litigation involving the '138 patent as now infringing the claims of the '287 patent.

For these reasons, Apotex respectfully submits that Amgen is collaterally estopped from alleging Apotex's manufacturing process infringes any claim of the '287 patent or that Amgen can now argue that the "thiol-pair" claim terms in the '287 patent should be construed differently from this Court's claim constructions in the prior litigation involving the '138 patent.

      **C.**      **Amgen's Disavowal of Claim Scope and Collateral Estoppel From the Prior Litigation Warrant Dismissal of Amgen's Complaint For Failure to State a Claim**

As Apotex's Motion makes clear, Amgen's Complaint fails to plead beyond mere conclusions how Apotex's manufacturing process infringes any claim of the '287 patent. And given the opportunity to clarify exactly how Apotex's manufacturing process infringes the claims of the '287 patent in its Opposition, Amgen similarly failed to do so, instead relying on the same ambiguous, conclusory language from its Complaint. Such bald conclusions, without anything more, cannot satisfy the pleading standard set forth in *Twombly* and *Iqbal*.

The '287 patent discloses that refolding proteins with a redox system (i.e., an oxidant and reductant) was well known in the prior art and is thus not the subject of the alleged invention of the '287 patent. D.E. 9, Exh. 7 at col. 1, ll. 53-57. It was the relationship of the oxidant and reductant through the thiol-pair ratio and thiol-pair buffer strength that served as the crux of the alleged invention. While Amgen's Complaint cites only claim 16 of the '287 patent (D.E. 1 at ¶ 34), all of the independent claims (and thus all dependent claims) require that the "amounts of the oxidant and reductant are related through a thiol-pair ratio and thiol-pair buffer strength" (*see* D.E. 9, Exh. 7 at claim 1, 10, 16, and 26). Further, as discussed above, each independent claim requires calculating the "thiol-pair ratio" to determine whether it "is in the range of 0.001-100," and the sole basis disclosed for making this calculation is by using the equations recited in the dependent claims. *See* D.E. 9, Exh. 7 at col. 6, ll. 46-55 and 56-68. Make no mistake, only by specifically using these equations in a protein refolding process can an alleged infringer satisfy the element of the "amounts of the oxidant and reductant are related through a thiol-pair ratio and thiol-pair buffer strength."

To be sure, any manufacturing process that merely uses an oxidant and reductant as a part of its refolding process, without anything more, cannot literally infringe the claims of the '287 patent. To this end, that is where Amgen's literal infringement allegations fall apart. All Amgen points to in both its Complaint and Opposition is that Apotex uses an amount of an oxidant and a reductant in its refolding process. Indeed, in the only paragraphs of its Complaint that compare

Apotex's manufacturing process with claim 16 of the '287 patent, Amgen has no problem specifying the disclosure of Apotex's aBLA that satisfies certain elements, such as the specific protein; the amount of oxidant and reductant; and the denaturant, aggregation suppressor, and protein stabilizer.  D.E. 1, ¶¶ 36-40.  But when it comes to identifying what in Apotex's aBLAs satisfies the limitation "amounts of the oxidant and reductant are related through a thiol-pair ratio and thiol-pair buffer strength" of claim 16, Amgen merely recites the claim limitation.  *Id.* at ¶ 39.  Amgen would just like this Court to takes its word for it, citing to four pages of Apotex's aBLA, without explaining where Apotex relates the amount of oxidant and reductant through the thiol-pair ratio and thiol-pair buffer strength.  There is no dispute, Apotex never relates the amount of oxidant or reductant through a thiol-pair ratio and thiol-pair buffer strength.  If Apotex did, surely Amgen would have pointed it out in its Opposition.

Similarly, Amgen fails to identify where the limitation "the thiol-pair buffer strength maintains the solubility of the solution" of claim 16 appears in Apotex's aBLAs.  Just like the "take our word for it" allegations regarding the thiol-pair ratio and thiol-pair buffer strength limitation discussed above, Amgen similarly recites the claim language and four pages of Apotex's aBLAs that allegedly infringe this limitation.  But where in this four pages of Apotex's aBLAs is this limitation met?  Amgen does not specify, because it cannot do so.  As Apotex discussed in its Motion to Dismiss, this limitation was important for Amgen to overcome the prior art during prosecution; yet, when it comes to alleging infringement, Amgen does nothing more than make unsupported, bald conclusions.

> **D.    The Court Need Not Assume that Amgen's Baseless Allegations are True, and the Allegations Do Not Warrant Discovery**

Where, as here, allegations are more conclusory than factual, then the court need not assume their truth.  *See Mamani v. Berzain*, 654 F.3d 1148, 1153-54 (11th Cir. 2011); *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

Further, the plausibility standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Thus, *Iqbal/Twombly* serve to "avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).  A plaintiff cannot survive a motion to dismiss by arguing that discovery *might* reveal a theory of liability.  *See In re*

9

*Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 248 (3d Cir. 2012) (granting dismissal because it was "pure conjecture" to conclude that discovery would reveal facts sufficient to support plaintiffs' infringement theory). This rule is especially relevant here, as this suit was brought after the parties engaged in full discovery relating to Apotex's aBLAs and manufacturing processes in a prior litigation, the very same aBLAs and manufacturing processes accused of infringement in this case. Indeed, Amgen had all of the information it needed to raise a plausible case of infringement, and yet Amgen's Complaint failed to do so.

### E.   Apotex's Motion Cites *Coherus* As Instructive, Not Precedential

Amgen argues that the Court should disregard the *Coherus* decision because it involved: (1) a different patent and a different manufacturing method; (2) literal infringement, not the doctrine of equivalents; and (3) another court did not grant a motion on the pleadings on the same patent involved in the *Coherus* case. D.E. 46 at 17-18. However, Apotex's Motion cites *Coherus* as instructive because it involved a district court's analysis and handling of similar bald, conclusory allegations in a Complaint. The fact *Coherus* involved a different patent is irrelevant.

Similarly irrelevant is the fact that Amgen alleges literal infringement in this case while it alleged infringement under the doctrine of equivalents in *Coherus*. As explained above, Amgen's arguments during the prosecution of the '287 patent similarly limit the literal scope of the claims under the doctrine of prosecution history disclaimer. In either case, Amgen's clear and unmistakable surrender of subject matter during the prosecution of the '287 patent makes its unsupported infringement allegations untenable and ripe for dismissal.

Further, the fact that the *Mylan* court did not follow the *Coherus* court's dismissal of the case is equally inapposite. In *Mylan*, the court found that claim construction was necessary in order to rule on the defendant's motion on the pleadings. This case is different. As discussed above, no claim construction is necessary because the claim limitations relevant to Apotex's Motion to Dismiss were construed by this Court in the prior action involving the '138 patent.

### III.   REQUEST FOR ORAL HEARING

Apotex joins Amgen's request for an oral hearing. Counsel for Apotex is not available the week of March 4-8, 2019 due to business travel overseas.

### IV.   CONCLUSION

For the foregoing reasons, Apotex's motion to dismiss should be granted.

10

Dated: February 6, 2019                              Respectfully submitted,

By: */s/Simeon D. Brier*
Simeon D. Brier (Florida Bar No. 525782)
Matthew B. Criscuolo (Florida Bar No. 58441)
**COZEN O'CONNOR**
One North Clematis Street
Suite 510
West Palm Beach, FL 33401
Telephone: 561-515-5250
Email: sbrier@cozen.com
          mcriscuolo@cozen.com

*and*

Kerry B. McTigue
Barry P. Golob
W. Blake Coblentz
Aaron S. Lukas
**COZEN O'CONNOR**
1200 Nineteenth Street NW
Washington, DC 20036
Telephone: 202-912-4800
Email: kmctigue@cozen.com
          bgolob@cozen.com
          wcoblentz@cozen.com
          alukas@cozen.com

*and*

Keri L. Schaubert
**COZEN O'CONNOR**
Cozen O'Connor
277 Park Avenue
New York, NY 10172
212-883-4900
Email: kschaubert@cozen.com

*Attorneys for Defendants Apotex Inc. and Apotex Corp.*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on February 6, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

                                                                             */s/Simeon D. Brier*
                                                                             Simeon D. Brier

**SERVICE LIST**

John F. O'Sullivan
Allen P. Pegg
Jason D. Sternberg
**HOGAN LOVELLS**
600 Brickell Ave., Suite 2700
Miami, FL 33131
Telephone: (305) 459-6500
Facsimile: (305) 459-6550
Email: john.osullivan@hoganlovells.com
         allen.pegg@hoganlovells.com
         jason.sternberg@hoganlovells.com

*Of Counsel*:
Nicholas Groombridge
Jennifer H. Wu
Jennifer Gordon
Jacob T. Whitt
Stephen A. Maniscalco
Golda Lai
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON**
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: ngroombridge@paulweiss.com
         jwu@paulweiss.com
         jengordon@paulweiss.com
         jwhitt@paulweiss.com
         smaniscalco@paulweiss.com
         glai@paulweiss.com

Wendy A. Whiteford
Kimberlin Morley
Eric Agovino
**AMGEN INC.**
One Amgen Center Drive
Thousand Oaks, CA 91320
Telephone: (805)447-1000
Facsimile: (805) 447-1010
Email: wendy@amgen.com
         kmorley@amgen.com
         eagovino@amgen.com

*Attorneys for Plaintiffs Amgen Inc. and*
*Amgen Manufacturing Limited*